# White *v.* Rankin & Co.

*Statutory Claim Suit for Shares of Stock in Corporation.*

1. *Judicial notice of circuit clerks.*—The court is bound to know judicially whether a person, whose name is signed to an execution as clerk, was in fact the clerk at that time; and may refuse to receive oral evidence to disprove the fact.

2. *Transfer of stock on books of company; lien of execution as against unregistered claimant.*—Under statutory provisions, shares of stock in a private corporation are made subject to levy and sale under execution or attachment, and transfers thereof, not duly registered on the books of the corporation, are declared void as against *bona fide* creditors and subsequent purchasers without notice (Code, 1876, §§ 2041–44; Code, 1886, §§ 1670–73); and these provisions embracing "all transfers, hypothecations, mortgages, or other liens," apply to the equity of a claimant for whose benefit stock has been subscribed by another person in his own name, and who has paid several installments, but has not obtained a certificate, and subordinate his rights to the lien of an execution creditor of the nominal shareholder, without notice.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. HENRY C. SPEAKE.

This was a statutory trial of the right of property in and to ten shares of stock in the Sheffield & Tuscumbia Street Railway Company, between Rankin & Co., plaintiffs in execution against J. C. Boyleston, and Walter S. White as claimant. The transcript has not come to the hands of the reporter. The opinion states the material facts.

KIRK & ALMON, for appellants.

J. B. MOORE, *contra.*

CLOPTON, J.—The court committed no error in refusing to receive oral evidence that McNab, who signed the execution, was not the clerk of the Circuit Court of Barbour county at the time it purports to have been issued. The clerk being a commissioned officer, the court was authorized and bound to take judicial knowledge that he was clerk, and also of his term of office, when it commenced, and when it expired.—*Cary v. State*, 76 Ala. 78; *Bishop v. State*, 30 Ala. 34. If the cognizance extends beyond actual knowledge, the judge may resort to any authoritative sources of information, and inform himself of the fact in any way he may deem best, in his discretion;

but he is not required to receive oral evidence to disprove a fact, the existence of which is judicially known to the court.

Appellant interposed a claim to ten shares of the capital stock of the Sheffield & Tuscumbia Street Railway Company, which were levied on under execution issued on a judgment obtained by appellees against J. C. Boyleston. The evidence on the trial of the right of property shows, that the stock was subscribed for by Boyleston in his own name, and was so registered on the books of the corporation at the time of the levy of the execution, but that he subscribed for it by request of, and for the claimant. Only two calls or assessments on the stock were made; the first being paid by Boyleston, with the money which he owed White, and the other by White himself. The stock not having been fully paid up, no certificate of shares has been issued. The question is, whether, on these facts, the lien of the execution prevails over the equity of claimant, the plaintiff in execution having notice thereof. The levy having been made, and the claim interposed, before the Code of 1886 went into effect, the question must be determined by the statutory provisions as found in the Code of 1876. They are, however, substantially the same in both Codes.

In the absence of the statute, shares in private corporations, being intangible, and regarded in the nature of *choses* in action, are not amenable to levy under execution. To remedy this defect in the law, a statute was enacted, declaring: "The shares or interest of any person in any incorporated company are personal property, and transferrable on the books of the company in such manner as is or may be prescribed by the charter, or articles of incorporation, or by-laws and regulations of the company; and such shares or interest may be levied on by attachment or execution, and sold as goods and chattels." The levy may be made with or without the officer having the possession of the certificate, or other evidence of the ownership of the stock or interest, by indorsement on the attachment or execution.—Code, 1876, § 2041. The shares, not the certificates representing them, are made subject to levy. In regard to the registration of transfers of stock, section 2043 provides: "When, by the charter, articles of association, or by-laws and regulations of an incorporated company, the transfer of the stock is required to be made upon the book or books of such company, no transfer of stock shall be valid as against *bona fide* creditors, or subsequent purchasers, without notice, except from the time that such transfer shall have been registered upon the book or books of such company." It appears that a by-law of the corporation required the secretary to keep a book in which all stock certificates and transfers

shall be registered.    In declaring a transfer inoperative against *bona fide* creditors without notice, except from the time it is registered as required, the statute gives such creditor, whose execution has been levied before that time, a lien superior to the claim or title of the transferrees.—*Berney Nat. Bank v. DeBardeleben*, 87 Ala. 577 ; *Fisher v. Jones*, 82 Ala. 117 ; *Jones v. Latham*, 70 Ala. 164.

It is insisted that the statute was intended to protect creditors and purchasers against dormant transfers and conveyances by the holder of the stock, and has no application when the subscription was made for another by the debtor, though made and the stock registered in his own name.    This insistence is rested on the theory that, as the statute makes no difference, as to amenability to levy and sale, between stock in an incorporated company and other personal property, placing both in this respect on the same footing, only the title or interest of the defendant in execution is subject to levy and sale, and where there has been no actual transfer, and the stock never belonged to the debtor, though standing in his name on the books of the company, the judgment-creditor acquires no lien, and a purchaser at the execution sale would obtain it subject to the outstanding equity.    A construction which limits the provisions and requirements of the statute to actual transfers by the holder, and excepts from its effect and purpose protection to creditors against an undisclosed equity to a transfer, restricts its operation within too narrow limits, and defeats its policy in a great measure.    The broad and comprehensive language of section 2044 makes apparent the intention to include all transfers and liens, legal or equitable.    After requiring an incorporated company to make provision for the transfer of its stock on the books, the section provides : "And persons holding stock not so transferred or registered, or holding any stock under hypothecation, mortgage or other lien, must have the transfer, hypothecation, mortgage or other lien, made or registered on the books of the company; or, upon failing to do so within fifteen days, all such transfers, hypothecations, mortgages or other liens, shall be void as to *bona fide* creditors, or subsequent purchasers without notice,"—transfers and liens of every description, verbal or written, legal or equitable.

The contention of claimant is based on a misconception of the nature and extent of a subscription for stock in private corporations.    When accepted, it creates the *status* of shareholder, with all its resulting incidents, rights, and liabilities. The subscriber has, not merely the possession so far as such property is capable of possession, but also the apparent own-

[White v. Rankin & Co.]

ership, power of disposition, and the legal estate—the right to the certificates, to vote, share in the dividends, and transfer the stock without the certificates. White could not have been substituted as share-holder, except by consent of the company, or by transfer registered on its books, the by-laws requiring such registry to make the transfer effective. In the estimation of the statutes, the person in whose name the stock is registered is the owner. The manifest purpose of requiring special registration of any change or other state of ownership is, to give notice to creditors and purchasers, and to prevent fraudulent transfers and secret trusts. The subscription having been made for him, and the two assessments having been paid by him, White may have an equity, but an equity which does not become perfect until he has fully paid up the stock, or is substituted as share-holder, so as to release Boyleston from his obligations to the company, and liability to the corporate creditors. Until then, he is not entitled to a transfer, and as between him and Boyleston his equity is, at most, an equitable charge or lien on the stock for the amount paid by him. If, in the state of the stock shown by the evidence, Boyleston had made a transfer to White, it would scarcely be contended that such transfer would be operative against creditors, unless registered in the mode required by the statute. The terms of the statute are used in their most extended signification. When so construed, and the objects and policy of the statutes are kept in view, an equity arising from a voluntary subscription for stock for another, made by the debtor in his own name, and the same registered on the books of the company in his name by permission of such other person, of the ownership of which, the stock not having been fully paid up, he can not be divested except by a voluntary transfer, comes within the spirit and purposes of the statutes, if not within the letter. Such equity can not prevail over the lien of a judgment creditor, having no notice thereof, actual or constructive. The rulings of the court are in accord with these views.

Other exceptions appear in the record, but they are not assigned as error.

Affirmed.